UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

**DEBORAH LAUFER,**
　　　　　**Plaintiff,**

**v.**　　　　　　　　　　　　　　　　　　　**Case No: 2:20-cv-344-GZS**

**ACHESON HOTELS, LLC,**
　　　　　**Defendant.**

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

　　　　　Plaintiff, by and through undersigned counsel, hereby submits this Memorandum In Opposition To Defendant's Motion To Dismiss.

**I.　　Introduction**

　　　　　As alleged in the Plaintiff's original Complaint and stated in her Affidavit, Exhibit A, Plaintiff is a disabled person within the meaning of the Americans With Disabilities Act, 42 U.S.C. Sections 12181, et seq. ("ADA"). Plaintiff is a resident of Florida. Defendant provides the public with booking services for its hotel through an online reservations system.  (Hereinafter "websites", "online reservations systems" or "ORS".)  The purpose of this ORS is so that Defendant can reach out and market to persons all over the country and in their own homes to solicit their patronage, provide them with information so that they can make a meaningful choice in planning trips, and, in some instances, book a room at the hotel.  As such, the Defendant's ORS is required to comply with the requirements of 28 C.F.R. Section 36.302(e)(1)(hereinafter "Regulation"), by identifying and allowing for booking of accessible rooms and providing accurate and sufficient information as to whether all the features at the hotel are accessible.  Prior to the filing of this lawsuit, Plaintiff reviewed Defendant ORS and found that it did not comply

with the Regulation in any respect. Plaintiff therefore filed the instant action for injunctive relief
pursuant to the ADA. Plaintiff's original Complaint did not include references to her travel plans
because Plaintiff believes that the law, as described below, does not require that intent is an
element to his cause of action or injury. However, Plaintiff has filed an Amended Complaint to
explain her travel plans to the area. See also Affidavit, para. 5.

## II.    The Applicable Standard

In *Torres-Negron v. J&N Records, LLC,* 504 F.3d 151, 163 (1st Cir. 2007), the First

Circuit described the applicable standard as follows:

> W]here . . . 'the jurisdictional issue and substantive claims are so intertwined the
> resolution of the jurisdictional question is dependent on factual issues going to the merits,
> the district court should employ the standard applicable to a motion for summary
> judgment.'" *Autery v. United States,* 424 F.3d 944, 956 (9th Cir. 2005) (quoting *Rosales v.
> United States*, 824 F.2d 799, 803 (9th Cir. 1987)). Thus, where the relevant facts are
> dispositive of both the 12(b)(1) motion and portions of the merits, the trial court should
> grant the motion to dismiss "'only if the material jurisdictional facts are not in dispute and
> the moving party is entitled to prevail as a matter of law.'" *Trentacosta v. Frontier Pac.
> Aircraft Indus., Inc.*, 813 F.2d 1553, 1558 (9th Cir. 1987) (quoting *Augustine v. United
> States*, 704 F.2d 1074, 1077 (9th Cir. 1983)); see also *Richmond, Fredericksburg &
> Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). If the plaintiff
> presents sufficient evidence to create a genuine dispute of material (jurisdictional) facts,
> then the case proceeds to trial, so that the factfinder can determine the facts, and the
> jurisdictional dispute will be reevaluated at that point.

## III.   The Issue Of Intent

The issue raised by the Defendant is whether it is sufficient for a disabled person to
review a discriminatory ORS to have suffered cognizable injury-in-fact, or whether injury
requires the additional element that the plaintiff intend to book a room at the hotel or otherwise
intend to visit the hotel. ("Physical nexus" or "intent to book" requirement.)

As explained more fully below, there is a conflict among the various districts, with a

majority of courts applying the "weight of the law" which stands for the proposition that a disabled person suffers complete injury-in-fact when they review a discriminatory ORS because they are deprived of their right to information ("informational harm"). The initial complaint is consistent with these authorities, which hold that nothing additional is required. However, a minority of district courts (cited by Defendant) impose the additional requirement of physical nexus/intent. For the reasons set forth below, the minority opinions are fundamentally flawed.

In responding to Fed. R. Civ. P. 12(b)(1) motions to dismiss, Plaintiff originally rested on the sufficiency of her pleadings, but submitted affidavits explaining her travel plans. This would have satisfied the minority courts' concerns, but for the fact that, in ruling, they disregarded her affidavits and instead ruled on the pleadings which were based on the theory of law applied by the majority of courts. For this reason, one of these minority courts (*Laufer v. Dove Hess Holdings, LLC*, 2020 U.S. Dist. Lexis 246614, ** 9-11 (N.D. N.Y. 11/18/20[1])) held that Laufer acted in good faith in defending her pleadings even though it invited her amend her pleadings to conform to the minority view: namely that a intent element is required AND must appear in the pleadings: not simply the Affidavit.   In this regard, Plaintiff's Amended Complaint satisfies the criteria set forth in *Dove Hess*. Under *Dove Hess*, for Laufer to satisfy a minority court's intent requirement, she may amend her complaint to allege that her motivation for reviewing a hotel's ORS at least party included the purpose of considering that hotel (comparing it to others) in deciding where to stay during her upcoming trip - such intent existing both prior to the filing of the complaint and for her future revisit to the websites.  For example, the *Dove Hess* court held

---

[1]*Dove Hess*, *Laxmi* and *1110 Albany*, cited by Defendant, were essentially the same opinion rendered by the same Judge, but filed in numerous cases.

that Laufer's pleadings describing her system of revisiting ORS sites, as well as her intent to

travel as soon as the Covid crisis subsides, are satisfactory. *Id.*, pp. 45-46.

Thus, Plaintiff's amended complaint comports with the intent criteria by the minority

courts. However, for the reasons set forth below, the imposition of the intent requirement by the

minority courts is improper.

### A.      The Majority Of Courts Have Rejected The Physical Nexus/Intent Requirement

The majority of District Courts considering the issue have declined to impose the

intent/nexus requirement.  See *Laufer v. Lily Pond, LLC C Series*, 2020 U.S. Dist. Lexis 244506

(W.D. Wis. Dec. 30, 2020); *Laufer v. U.L.S.T., LLC dba Waterfront Hotel & Marina*,  2020 U.S.

Dist. LEXIS 206417 (N.D.Ill. 11/4/20); *Parks v. Richard*, 2020 U.S. Dist. Lexis 86790 (M.D.

Fla. 2020); *Kennedy v. Gold Sun Hospitality, LLC*, 8:18-cv-842-T-33CPT, DE 23, at pp.  30-31,

(M.D. Fla. June 18, 2018); *Kennedy v. Swagath Hospitality, LLC*, 0:19-cv-60583-DPG, DE 27

(S.D. Fla. 1/2/2020); *Kennedy v. Galleon Resort Condominium Assn, Inc., et al.*, 19-cv-62421-

CMA, DE 52 (S.D. Fla. 1/28/20); *Kennedy v. WGA*, 2:19-cv-0095-RWS, DE 16, p. 9 (N.D. Ga.

11/5/2019); *Poschmann v. Fountain TN, LLC*, 2019 U.S. Dist. Lexis 159417, **4-6 (M.D. Fla.

2019); *Poschmann v. Coral Reef of Key Biscayne Developers, Inc.*, 2018 U.S. Dist. Lexis 87457.

*8 (S.D. Fla. 2018); *Kennedy v. New Yorker Hotel, Miami, LLC*, 0:18-cv-62897-WPD, DE 34

(6/6/19);  *Kennedy v. Murnane, et al.*, 0:18-cv-63086-WPD, DE 10 (S.D. Fla. 3/5/19); *Kennedy*

*v. Italia, LLC*, 0:19-cv-61938-MGC, DE 35 (S.D. Fla. 8/10/20);;  *Kennedy v. Nisha Inc.*, 2020

U.S. Dist. LEXIS 170829, *9 (M.D. Fla. 9/17/20)("the weight of the law, as it currently exists,

supports Plaintiff's argument as to standing"); *Kennedy v. Nila Investments, LLC*, 2:19-cv-90-

LGW-BWC, DE 34 (S.D. Ga. 7/1/20);  *Kennedy v. Sai Ram Hotels, LLC*, 2019 U.S. Dist. LEXIS

80111, *4-6 (M.D. Fla. 5/13/19); *Kennedy v. Floridian Hotel, Inc.*,  2018 U.S. Dist. LEXIS

207984, at *9 (S.D. Fla. 2018).  Other courts have recognized that the site of the injury is in the

plaintiff's own home when they review the discriminatory ORS.  *Poschmann v. Liberty Inn*

*Motel, LLC*,  2:18-cv-14348, ECF No. 17 at 4-5 (S.D. Fla. Jan. 23, 2019); *Brooke v. Hotel Inv.*

*Grp., Inc.*, 2017 U.S. Dist Lexis 150717, * 6 (D. Ariz. 2017);  *Brooke v. Regency Inn-Downey,*

*LLC*, 2017 U.S. Dist. Lexis 150716 (D. Ariz. 2017); *Gold Sun,* at pp.  30-31.

Because (under the authority cited above) a plaintiff who encounters a discriminatory

website suffers in injury in their own home, cases such as *Harty v. Greenwich* and *Judy v.*

*Pingue*, cited by Defendant, are inapposite. In those cases, the plaintiff only suffered injury when

they visited the defendant's physical property and will only suffer injury again when they revisit

the property. In those cases, courts apply a four part Proximity Test that analyzes such factors as

the distance between the plaintiff's residence and the physical property in order to decide the

plausibility that the plaintiff will AGAIN suffer injury in the future.  These cases, as one court

noted, are entirely irrelevant to analyzing standing in cases involving website discrimination.

*Camacho v. Vanderbilt University,* 2019 WL 6528974 at p. 11, 2019 U.S. Dist. Lexis 209202

(S.D.N.Y. 2019). See also *Gold Sun, infra* (questining the applicability of Proximity Test).

Indeed, the authorities cited above nearly universally hold that the issue is whether or not the

plaintiff will again encounter the discriminatory website: not the physical property.[2]

---

[2]Numerous other courts have held that the proximity test is not applicable in the context
of hotels because hotels are, by nature, established to accommodate travelers from afar. *Bodley v.*
*Plaza Management Corp*., 550 F.Supp.2d 1085, (D. Ariz. 2008);  *D'Lil v. Best Western Encina*
*Lodge & Suites*, 415 F. Supp.2d 1048, 1056 (C.D. Cal. 2006); *Access 4 All, Inc. V. Wintergreen*
*Commercial P'ship*, 2005 WL 2989307, at *4 (N.D. Tex. Nov. 7, 2005); .  *Access 4 All, Inc. v.*

### B.    The Minority Cases Are Flawed

Defendant cites *Laufer v. Laxmi & Sons, LLC,* 2020 U.S. Dist. Lexis 216752 (N.D.N.Y. May 6, 2020)(which attached its decision in *Dove Hess*); *Laufer v. 1110 Western Albany, LLC*, N.D. N.Y Case No. 1:19-cv-01324-BKS-ML (same judge as *Laxmi* and *Dove Hess* and resulted in *Dove Hess* decision); *Laufer v. BRE/ESA P Portfolio, LLC*, (1:20-cv-01973-SAG (D.Md.), which followed *Laufer v. Ft. Meade Hospitality, LLC,* No. 8:20-cv-1974-PX (D.Md.). The Maryland decisions are presently on appeal. As the *Dove Hess* decisions merely invited Plaintiff to amend her complaint, the order was not appealable.

The cases cited by Defendant join the minority of opinions which impose a physical nexus/intent requirement and, for the reasons set forth below, they are fatally flawed because they are based on a complete misinterpretation and/or failure to apply applicable case law. To begin, they are premised on the fundamental fiction that they follow prior established precedent. All these cases followed the decision in *Hernandez v. Caesars License Co., LLC,*2019 U.S. Dist. LEXIS 172456 (D.N.J. Oct.4, 2019) as being the prior precedent on the issue. The *Hernandez* court, in turn, claimed that there was prior precedent on point that it was following. 2019 U.S. Dist. Lexis 172456, at ** 8-9. However, such precedent is entirely of the *Hernandez* Court's own concoction. In this regard, the *Hernandez* court stated that two prior decisions imposed a physical nexus/intent to book requirement. However, neither opinion cited stands for such a holding. One case cited by the *Hernandez* Court is *Juscinska v. Paper Factory Hotel, LLC*, 2019 U.S. Dist. Lexis 92550 (S.D.N.Y. 2019). However, the *Juscinska* court only noted in dicta that the plaintiff

---

*539 Absecon Blvd*., 2006 WL 1804578, at *3 (D.N.J. 2006).  Indeed, at least one court has ruled that a plaintiff who lives **too close** to a hotel has no standing to sue for compliance. See *Access 4 All, Inc. v. Thirty East 30th Street, LLC*, 1:04-Civ-3683, DE 36, at 17 (S.D. N.Y. 12/11/06).

6

had the intention of booking a room. It never held that such an intent was required. Noting that the plaintiff intended to book a room is far different from holding that such intent is a requirement of the law.  Indeed, this point was acknowledged by the *Dove Hess* Court, at * 43.  It is therefore inexplicable that the *Dove Hess* court opted to follow *Hernandez* despite being on notice that *Hernandez* was so badly misinterpreting the law.  In fact, as explained, infra, the *Dove Hess* court made a substantially similar misinterpretation of another case - *Camacho* - reasoning that Camacho imposed the intent requirement when it did NOT. The second case cited by the *Hernandez* Court was *Poschman v. Coral Reef Of Key Biscayne Developers, Inc.*, 2018 U.S. Dist. Lexis 87457  (S.D. Fla. 5/22/18). However, the *Poschmann* decision actually stated that solely testing a website system for compliance satisfies standing. *Poschmann*, 2018 U.S. Dist. Lexis 87457 at *8 ("Plaintiff intends to return to the Website within thirty days to determine whether the Hotel is accessible to him, and, if so, to reserve a room at the Hotel **_or_ to test the Hotel's Website reservation system for its compliance with the ADA**.")(emphasis added). By this language, the *Poschmann* opinion held the exact opposite of what the *Hernandez* court stated. In sum, the *Hernandez* decision is entirely founded on its own misreading of other cases.

C.      **The Rules Of Statutory Construction Require That The Physical Nexus Requirement Cannot Be Imposed**

The minority cases completely ignored the rules of statutory construction, the plain and unambiguous language of the statute and Regulation, and instead improperly imposed the additional requirement of "intent" into the governing statutory language, where Congress had omitted it. It is paramount that the plain words of the Statute and duly promulgated Regulation govern.  Several general maxims apply. "Statutory interpretation always begins with the plain

7

language of the statute, which [the court] consider[s] in 'the specific context in which that language is used, and the broader context of the statute as a whole.'" *In re Ames Dep't Stores, Inc.*, 582 F.3d 422, 427 (2d Cir. 2009);  *Jiminez v. Quarterman*, 555 U.S. 113, 118 (2009).  If the language is unambiguous, no further inquiry is necessary. *Clark v. Astrue*, 602 F.3d 140, 147 (2d Cir. 2010). "Our duty is to say what statutory language means, not what it should mean, and not what it would mean if we had drafted it." *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1333-34 (11th Cir. 2013), citing *T-Mobile South, LLC v. City of Milton, Ga.*, 728 F.3d 1274, 2013 WL 4750549, at *10 (11th Cir. 2013).  "We are not at liberty to rewrite the statute to reflect a meaning we deem more desirable.". *Marod*, 733 F.3d at 1334, citing  *Ali v. Fed. Bureau of Prisons, 552 U.S. 214, 228 (2008)*.  A court may not read words or elements into a statute that do not appear on its face, including a requirement regarding intent.  See *Bates v. United States*, 522 U.S. 23, 29 (1997)(intent requirement cannot be judicially added). A court is "not allowed to add or subtract words from a statute." *Marod*, 733 F.3d at 1333-34. The Supreme Court recently reiterated these principles. See  *Bostock v. Clayton Cty.*, 140 S.Ct. 1731, 1738 (2020)("If judges could add to, remodel, update, or detract from old statutory terms inspired only by extratextual sources and our own imaginations, we would risk amending statutes outside the legislative process reserved for the people's representatives. And we would deny the people the right  to continue relying on the original meaning of the law they have counted on to settle their rights and obligations."); *New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 539 (2019)("if judges could freely invest old statutory terms with new meanings, we would risk amending legislation outside the "single, finely wrought and exhaustively considered, procedure" the Constitution commands.").

In other words, an interpreting Court must look to the plain language of the Statute and

Regulation in analyzing whether a disabled person who encounters a discriminatory ORS has a cause of action or whether they must ADDITIONALLY intend to book a room at the hotel or ADDITIONALLY encounter discriminatory conditions located at the physical premises.  More significantly, if such additional restrictive language is found elsewhere in the Statute, but not in the provisions governing the case at bar, such exclusion of the restrictive language is intentional and dispositive.

> "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."

*INS v. Cardoza—Fonseca*, 480 U.S. 421, 432 (1987); see also *Patel v. McElroy*, 143 F.3d 56, 60 (2nd. Cir 1997).

Plaintiff's claims are based on the following:

42 U.S.C. Section 12188(a) provides:

> The remedies and procedures set forth in section 2000a–3(a) of this title are the remedies and procedures this subchapter provides to any person who is being subjected to discrimination on the basis of disability in violation of this subchapter....

42 U.S.C. Section 12182(a) provides:

> (a) General rule
> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. Section 12182(b)(2)(A) expands on the definitions of the above subsection to include:

> [A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations

42 U.S.C. Section 12182(b)(2)(A)(ii).

This latter subsection is the subject of regulations promulgated by the Department Of

Justice ("DOJ").[3] Specifically, the DOJ promulgated  28 C.F.R. Section 36.302(e)(1)(hereinafter

"Regulation"), which provides:

> (1)Reservations made by places of lodging. A public accommodation that owns, leases
> (or leases to), or operates a place of lodging shall, with respect to reservations made by
> any means, including by telephone, in-person, or through a third party -
> (i) Modify its policies, practices, or procedures to ensure that individuals with disabilities
> can make reservations for accessible guest rooms during the same hours and in the same
> manner as individuals who do not need accessible rooms;
> (ii) Identify and describe accessible features in the hotels and guest rooms offered through
> its reservations service in enough detail to reasonably permit individuals with disabilities
> to assess independently whether a given hotel or guest room meets his or her accessibility
> needs; ...

The Statute and Regulation are directly on point and unambiguously spell out all the

elements of a cause of action. The plaintiff's right to injunctive relief is accorded by 42 U.S.C.

Section 12188(a), which provides that: "The remedies and procedures set forth in section

2000a–3(a) of this title are the remedies and procedures this subchapter provides to **any person**

**who is being subjected to discrimination** on the basis of disability in violation of this

subchapter..." (Emphasis added.)  A disabled person who encounters a non-compliant ORS

becomes entitled to relief under this provision pursuant to two different subsections "of this

subchapter".   First, 42 U.S.C. Section 12182(a) clearly spells out a complete cause of action as

follows: "No individual shall be discriminated against on the basis of disability in the full and

equal enjoyment of the ... services ... of any place of public accommodation..."  A commercial

---

[3]The DOJ promulgated 28 C.F.R. 36.302 to carry out the provisions of the ADA.
*Poschmann v. Coral Reef of Key Biscayne Developers, Inc.*, 2018 U.S. Dist. LEXIS 87457 *6
(S.D. Fla. May 23, 2018). A regulation promulgated pursuant to Congressional authority must be
given controlling weight. *Chevron, U.S.A., Inc. v. NRDC, Inc*., 467 U.S. 837, 843-44 (1984).

website is a "service" of a place of public accommodation. *Haynes v. Dunkin Donuts, LLC*, 741 Fed. Appx. 752, 754 (11ᵗʰ Cir. 2018)(unpublished opinion)(describing a commercial website as a "service" of a place of public accommodation); *Nat'l Fed'n Of The Blind v. Target Corp*., 452 F. Supp. 946, 953 (N.D. Cal. 2006)(same). Because a hotel's reservation  website system is a "service", all that is required is that a disabled person be deprived of full and equal enjoyment of this "service". Alternatively,42 U.S.C. Section 12182(b)(2)(A) expressly provides that "discrimination" includes a violation of 42 U.S.C. Section 12182(b)(2)(A)(ii). Because a non-compliant ORS violates this latter subsection, it is therefore "discrimination" and thus actionable to "any person" who encounters it.

The rules of statutory construction mandate a finding that a physical nexus requirement can NOT be imposed because any language expressing this requirement is conspicuously missing from the above cited Regulation and Statutory subsections. As set forth in the following cases, the imposition of substantially similar requirements have been extensively considered and rejected because they were noted to be present in other statutes or subsections, but absent from the applicable sections or subsections governing the claims before the courts reviewing them.

Indeed, there are three other subsections in 42 U.S.C. Section 12182 which contain restrictive language that is absent from the provisions that govern here. Subsection 12182(b)(1)(A) requires that a plaintiff be a client or customer of the defendant.[4] Two of the four sub-parts of Subsection 12182(b)(2)(A) contain restrictive language. Specifically, Subsection

---

[4]Although the *Dove Hess* Court acknowledged this argument and at least the "client or customer" subsection, 2020 U.S. Dist. LEXIS 216752, at * 26, it proceeded with its analysis by ignoring it altogether, thus failing to recognize that the Supreme Court and other circuit courts deem this critical.

12182(b)(2)(A)(i) states that discrimination includes:

> the imposition or application of eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities ***from*** fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations... (Emphasis added.)

This was the subsection at issue in *Rendon v. Valleycrest Prods.*, 294 F.3d 1279 (11th Cir. 2002), which involved a telephone screening process for potential contestants on Who Wants To Be A Millionare. In that case, imposition of a physical nexus requirement was appropriate because, under the subsection, encountering a discriminatory telephone screening process was not "discrimination" until it prevented disabled persons "from" full and equal enjoyment of a good, service, etc.

Subpart (iii) has a similar restriction. It states that discrimination includes -

> a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals ***because of*** the absence of auxiliary aids and services...

12182(b)(2)(A)(iii) (emphasis added.) This subsection has been applied to ADA cases filed by vision impaired individuals regarding the failure of commercial websites to contain the coding necessary to make them compatible with screen reader software. See *Robles v. Domino's Pizza, LLC*, 913 F.3d 898, 904 (9th Cir.; 2018), *cert. denied*, 140 S.Ct. 122(2019)(applying this subsection to screen reader software discrimination).

The three subsections cited above all contain restrictive language from which a physical nexus or intent to visit requirement can be readily imposed. However, neither the Regulation, nor 12182(b)(2)(A)(ii), nor 12182(a), which govern the case at bar, contain any such restrictive language and, therefore, it cannot be imposed.

12

Both *Marod*, 733 F.3d at 1333, and *PGA Tour v. Martin*, 532 U.S. 661, 678-79 (2001) applied this rule of statutory construction in holding that because Subsection 12182(b)(1)(A) contained a "clients or customers" requirement, but the general provision set forth in Subsection 12182(a) did not contain this restriction, it must be deemed excluded.

Although not an ADA case, the Supreme Court's decision in *Bates v. United States*, 522 U.S. 23 (1997) is helpful. There, the Court analyzed whether a lower court could properly impose an intent requirement into a criminal statute and held that because such a requirement was present in a different subsection, but missing from the one at issue, that it could not be judicially imposed. *Id.* at 29-30.

Additionally,  *Marod*, 733 F.3d at 1333,  followed the Supreme Court decision in *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), which also applied this principle, in holding that:

> Whereas Congress, in prohibiting discriminatory refusals to sell or rent in § 804(a) of the Act, 42 U. S. C. § 3604(a), required that there be a "bona fide offer" to rent or purchase, Congress plainly omitted any such requirement insofar as it banned discriminatory representations in § 804(d).

The cases cited by Defendant completely overlooked the above precedent when they effectively added the term of intent or physical nexus requirement into the language of the governing provisions.

### D.    *Havens Realty* Governs

The minority cases run afoul of the Supreme Court's ruling in *Havens Realty*, which establishes that, when the statute so provides, a plaintiff has a cause of action for informational injury even if they have no intention to make use of that information. The minority courts all based their holdings on the erroneous notion that *Havens Realty* is inapplicable.

13

In *Havens Realty*, the Supreme Court held that black testers had suffered injury under the Fair Housing Act and had the right to sue for deprivation of truthful information, even though they did not intend to rent or purchase an apartment. The Court held that:

> "As we have previously recognized, "actual or threatened injury required by Art. III may exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing . . . .'" *Warth v. Seldin*, [522 U.S. 490], 500 [(1975)], quoting *Linda R. S. v. Richard D*., 410 U.S. 614, 617, n. 3 (1973). Accord, *Sierra Club v. Morton*, 405 U.S. 727, 732 (1972); *Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 212 (1972) (WHITE, J., concurring). Section 804(d), which, in terms, establishes an enforceable right to **truthful information** concerning the availability of housing, is such an enactment. A tester who has been the object of a misrepresentation made unlawful under § 804(d) has suffered injury in precisely the form the statute was intended to guard against, and therefore has standing to maintain a claim for damages under the Act's provisions. That the tester may have approached the real estate agent fully expecting that he would receive false information, and without any intention of buying or renting a home, does not negate the simple fact of injury within the meaning of § 804(d). See *Pierson v. Ray*, 386 U.S. 547, 558   (1967); *Evers v. Dwyer*, 358 U.S. 202, 204 (1958) (per curiam).

*Havens Realty*, 455 U.S. at 373-74 (Emphasis added.) Thus, it was held that, based on the operative statutory language, (1) testers have standing; (2) informational injury is actionable and (3) intent is entirely irrelevant.  Under *Havens Realty*, this Court must apply the literal meaning of the words of the statute and cannot impose a requirement of intent if those words are missing.

The three circuit courts that addressed the issue observed that the "any person" operative language of the ADA is substantially similar to that of the statute at issue in *Havens Realty*. *Marod*, 733 F.3d at 1332-33.; *Civil Rights Educ. & Enforcement Ctr. v. Hosp. Properties Trust*, 867 F.3d 1093, 1101-02 (9th Cir. 2017)("exactly tracking").  In  *Colo. Cross-Disability Coalition v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1211 (10th Cir. 2014), the Tenth Circuit also held that this language was the same as that in Title II, thus following its prior decision in *Tandy v. City of Wichita*, 380 F.3d 1277, 1286 (10th Cir. 2004). All three circuits therefore held that ADA

testers have standing and their motive for encountering the discriminatory action is entirely irrelevant. The issue is strictly whether they encountered discrimination within the literal meaning of the applicable statutory language. In *Ragin v. Harry Macklowe Real Estate Co.*, 6 F.3d 898, 904 (2d Cir. 1993), the Second Circuit applied this same operative "any person" language analysis in holding that testers have standing over informational injury in the context of fair housing and a discriminatory advertisement - even though the plaintiffs had no intention of doing anything with that information. This is entirely consistent with Congress' stated purpose "(1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities; and (2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities[.]" 42 U.S.C. Section 12101. See also *Tandy*, 380 F.3d at 1287 ("Moreover, the ADA, like the FHA provisions at issue in *Havens Realty*, embodies a congressional intent to eradicate discrimination."). *See Hensley v. Eckerhart*, 461 U.S. 424, 445(1983) ("All of these civil rights laws depend heavily upon private enforcement, and fee awards have proved an essential remedy if private citizens are to have a meaningful opportunity to vindicate the important Congressional policies which these laws contain."); *Bruce v. City of Gainesville*, 177 F.3d 949, 952 (11th Cir. 1999). Courts have noted: "As a result, most ADA suits are brought by a small number of private plaintiffs who view themselves as champions of the disabled. For the ADA to yield its promise of equal access for the disabled, it may indeed be necessary and desirable for committed individuals to bring serial litigation advancing the time when public accommodations will be compliant with the ADA." *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1062 (9th Cir. 2007); *D'Lil v. Best Western Encina Lodge & Suites*, 538 F.3d 1031, 1040 (9th Cir. 2008). See also *Ragin,*, 6 F.3d at 904 (2d

Cir. 1993) (acknowledging testers right to enforce private attorney general statute). The result of a private attorney general statute such as the ADA is that "[i]t is not unprecedented in this country for advocacy groups and individual members of advocacy groups to find it necessary to file a long trail of lawsuits in federal courts to enforce legal and civil rights." *Marod*, 733 F.3d at 1326.

The *Dove Hess* court, at \*\*58-59, stated ""Courts must tread carefully before construing a Disability Act plaintiff's history of litigation against him," as "[f]or the [Disabilities Act] to yield its promise of equal access for the disabled, it may be necessary and desirable for committed individuals to bring serial litigation advancing the time when public accommodations will be compliant with" the ADA., citing *Antoninetti v. Chipotle Mexican Grill, Inc.*, 643 F.3d 1165, 1175 (9th Cir. 2010) (alterations in original) (citations omitted).

In *Antoninetti v. Chipotle Mexican Grill, Inc.*, 614 F.3d 971 (9th Cir. 2010), *cert denied*, 2011 WL 645276 (79 USLW 3514, April 18, 2011) the Ninth Circuit held that a disabled plaintiff's history of prior litigation cannot be considered against him. In *Antoninetti*, it was found that the plaintiff had filed 20 prior actions and never returned to any of the prior establishments after settlement was reached. Nonetheless, the court held:

> Courts must tread carefully before construing a Disability Act plaintiff's history of litigation against him. As we have noted more than once, "[f]or the [Disabilities Act] to yield its promise of equal access for the disabled, it may indeed be necessary and desirable for committed individuals to bring serial litigation advancing the time when public accommodations will be compliant with the [Disabilities Act]." [Citations omitted].We must therefore be particularly cautious regarding credibility determinations that rely on a plaintiff's past [Disabilities Act] litigation.

614 F.3d at 980.  In *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1069 (9th Cir. 2008)(J. Gould,

16

Concurring), it was stated:

> Similarly, we accord standing to individuals who sue defendants that fail to provide access to the disabled in public accommodation as required by the Americans with Disabilities Act ("ADA"), even if we suspect that such plaintiffs are hunting for violations just to file lawsuits. See *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1061-62 (9th Cir. 2007)("For the ADA to yield its promise of equal access for the disabled, it may indeed be necessary and desirable for committed individuals to bring serial litigation advancing the time when public accommodations will be compliant with the ADA.").

The Second Circuit followed *Havens Realty* with respect to the right to sue for informational injury even though the testers had no intention of doing anything with that information. *Ragin*, 6 F.3d at 904.  In *Ragin*,  the Second Circuit held that individuals had standing to sue under the Fair Housing Act for the defendant's placement of display advertising for residential apartments in the newspaper because all the models portrayed in the ad were white. The court noted that the plaintiff's had no intention of actually renting an apartment and were instead "combing the newspapers" looking for discriminatory ads so that they could bring a lawsuit. *Id.*, at 903-04. In this regard, the Second Circuit followed *Havens Realty* and stated as follows:

> There is no significant difference between the statutorily recognized injury suffered by the tester in *Havens Realty* and the injury suffered by the Ragins and the Cuylers, who were confronted by advertisements indicating a preference based on race. [citation omitted.]  Given the private attorney general provision in section 813(a) of the Act and the Supreme Court's holding in *Havens Realty*, the district court was constrained to find that the individual plaintiffs had standing to bring this action in federal court.

*Ragin*, 6 F.3d at 904. Indeed, the *Ragin* Court noted that the operative language "any person" bestowed this right.

Thus, because operative language of the ADA gives the right of relief to "any person", the imposition of an intent requirement would be in conflict with *Havens Realty*, *Ragin*, *Marod*,

*Tandy*, *Hosp. Properties Trust*, and *Abercrombie & Fitch Co.*.

The Supreme Court also subsequently reiterated that deprivation of a plaintiff's right to information, when legally required, gives rise to a cause of action. . See *Federal Election Comm'n v. Akins*, 524 U. S. 11, 20-25, [] (1998) (confirming that a group of voters' "inability to obtain information" that Congress had decided to make public is a sufficient injury in fact to satisfy Article III); *Public Citizen v. Department of Justice*, 491 U. S. 440, 449, [] (1989) (holding that two advocacy organizations' failure to obtain information subject to disclosure under the Federal Advisory Committee Act "constitutes a sufficiently distinct injury to provide standing to sue"). See also *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016)(recognizing this body of law). Additionally, various circuit courts have likewise cited *Havens Realty* in recognizing the actionable right to information. *Muransky v. Godiva Chocolatier, Inc.*, 2020 U.S. App. LEXIS 33995 (11th. Cir. 2020)(noting that *Spokeo* and *Havens Realty* support the right to information) *Watts v. Boyd Properties*, 758 F.2d 1482, 1485 (11th Cir. 1985)(noting *Havens Realty's* holding that plaintiff had right against receiving false information); *Bensman v. United States Forest Serv.*, 408 F.3d 945, 955-57 (7th Cir. 2005)(surveying cases and statutes where informational injury is recognized and actionable); *Carter v. Welles-Bowen Realty, Inc.* 553 F.3d 979, 989 (6th Cir. 2009)(discussing informational injury); *Wilderness Soc'y v. Rey*, 622 F.3d 1251, 1258-60 (9th Cir. 2010)(discussing informational injury); *Tandy v. City of Wichita*, 380 F3d 1277, 1290 (10th Cir. 2004)(Title II ADA tester has standing to sue for failure to provide required information); *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 273-74 (3rd Cir. 2016)(recognizing intangible harm as including unlawful denial of access to information subject to disclosure); *People For The Ethical Treatment Of Animals v. United States Dep't of Agric.*, 797 F.3d 1087,

1094-95 (D.C. Cir. 2015)(plaintiff had standing to sue for being deprived information required by law);  *Action Alliance of Senior Citizens v. Heckler*, 789 F.2d 931, 938 (D.C. Cir. 1986)(same); *Friends of Animals v. Jewell*, 828 F.3d 989, 992 (D.C. Cir. 2016)(same); *Carello v. Aurora Policemen Credit Union*, 930 F. 3d 830, 835 (7th Cir. 2019)(recognizing informational injury); *Robertson v. Allied Sols., LLC*, 902 F.3d 690, 694 (7th Cir. 2018) ("Even though not all statutory violations inflict concrete personal harm, withholding information when a statute requires its publication—sometimes called an 'informational injury'—may do so.); See also *White v. Arlen Realty & Dev., Corp.*, 540 F.2d 645, 649 (4th Cir. 1975)(pre-*Havens Realty* case holding that failure to disclose information required by Truth In Lending Act give rise to injury)..

Courts within this Circuit agree. See *Girder v. Convergent Outsourcing, Inc.*, 2016 U.S. Dist. Lexis 179834 (D. Mass. 2016)(applying *Spokeo* and *Havens Realty* in holding that the failure to disclose information required by the Fair Debt Collection Act was, by itself, a sufficient cause of injury); *Drolet v. Healthsource*, 968 F.Supp. 757 (D. N.H. 1997)(citing *Havens Realty* and recognizing right to truthful information under ERISA); *McKenna v. First Horizon Home Loan Corp.*, 429 F.Supp.2d 291, 304 (D. Mass. 2005)(recognizing deprivation of right to information as injury under Truth In Lending Act).

### E.    The Minority Courts Improperly Distinguished *Havens Realty*

The minority courts all avoided *Havens Realty* by improperly  holding that it is distinguishable. First, they reasoned that *Havens Realty* was not about informational injury, but was instead solely about intentional discrimination and disparate treatment - black persons being told one thing: white persons another. This interpretation is clearly erroneous. First, *Havens Realty*, 455 U.S. at 373-74, specifically referenced the right to "truthful information" multiple

19

times. In Akins, 524 U.S. at 21, the Supreme Court referred to *Havens Realty* as standing for the right to truthful information. The slew of circuit courts cited above have reached similar conclusions. See also *Haddad v. Midland Funding, LLC*, 255 F. Supp. 3d 735, 739-40 (N.D. Ill. 2017)("*Havens Realty* turns only on the misleading nature of the representations, not on the racial motivation behind them"). In light of the above, the interpretation that *Havens Realty* is not about the right to information is completely flawed.

Second, the issue of differential treatment, the minority courts held that the plaintiff had no cause of action because he/she was able to navigate the entire website and had access to the same information as non-disabled individuals and that *Havens Realty* is only applicable to private and individualized informational violations and not to public information, such as a hotel's ORS.  These absurd attempts at distinction are in conflict with *Ragin*, in which the Second Circuit held that black testers who had no intention of renting an apartment had standing to sue over a discriminatory advertisement placed in a newspaper - and was therefore equally viewable by the entire public. Indeed, many courts have cited *Havens Realty* as applicable to public information. The *Akins*, *Public Citizen, Muransky, Spokeo* and *Carello* Courts, among others, all indicated that this right applies to information that must be made **publically** available. Moreover, this interpretation reached by the minority courts that a discriminatory ORS website is not actionable because such a website is equally viewable to the entire public essentially abrogates the statute and Regulation as unenforceable, null and void. Such reasoning would therefore equally apply to such public violations as non-compliant physical conditions present in any place of **public** accommodation - thus invalidating the entire ADA. For example, under the minority courts' logic, a disabled person would lack standing to sue over a lack of handicap

20

parking spaces on the rationale that the entire public, including non-disabled persons, would equally view the same condition. The minority courts simply fail note that difference is that whereas a disabled person who encounters such conditions falls within the category of the "individual" described in 42 U.S.C. Section 12182(a) and "any person" described in 42 U.S.C. Section 12188(a), the non-disabled person does not fall into those categories and did not suffer any discrimination "on the basis of disability".

Moreover, distinguishing *Havens Realty* on any basis did not provide a legitimate excuse for the minority Courts to ignore the plain and unambiguous language of the Statute, or provide them with a justification to add a term which Congress omitted.

### F.   *Spokeo* Supports Plaintiff's Standing

The minority decisions completely misread *Spokeo*. There, the Supreme Court held that improper information which violated the Fair Credit Reporting Act did not, by itself, constitute injury, but specifically recognized the existence of statutes which provide that the dissemination of improper information constitutes an injury with nothing more required. The Court stated:

> Just as the common law permitted suit in such instances, the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact. In other words, a plaintiff in such a case need not allege any additional harm beyond the one Congress has identified. See *Federal Election Comm'n v. Akins*, 524 U. S. 11, 20-25, [] (1998) (confirming that a group of voters' "inability to obtain information" that Congress had decided to make public is a sufficient injury in fact to satisfy Article III); *Public Citizen v. Department of Justice*, 491 U. S. 440, 449, [] (1989) (holding that two advocacy organizations' failure to obtain information subject to disclosure under the Federal Advisory Committee Act "constitutes a sufficiently distinct injury to provide standing to sue").

*Spokeo,* 136 S.Ct. at 1549-50. In the *Akins* decision referenced by *Spokeo*, the Supreme Court, in turn, referenced *Havens Realty* as follows:

21

> Indeed, this Court has previously held that a plaintiff suffers an "injury in fact" when the plaintiff fails to obtain information which must be publically disclosed pursuant to a statute..... See also *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373-374[] (1982) (deprivation of information about housing availability constitutes "specific injury" permitting standing).

*Akins*, 524 U.S. at 21.  Thus, the *Spokeo* Court neither overturned nor narrowed *Havens Realty*, but instead acknowledged the body of law to which *Havens Realty* belongs.  Indeed, the concurring opinion in *Spokeo* expressly recognized *Havens Realty*. *Spokeo,* 136 S.Ct. at 1553 (Thomas J., Concurring). *Havens Realty* was also recognized in *Spokeo*'s dissent. 136 S.Ct. At 1555 (Ginsburg, J. Dissenting). In *Macy v. GC Servs., L.P.*, 897 F.3d 747, 754 (6th Cir. 2018), the Sixth Circuit noted that "[a] long line of Supreme Court precedent, cited approvingly in *Spokeo*, supports the conclusion that *Spokeo* did not mean to disturb the Court's prior opinions recognizing that a direct violation of a specific statutory interest recognized by Congress, standing alone, may constitute a concrete injury without the need to allege any additional harm."

In this regard, the rationale of the minority courts that *Spokeo* somehow narrowed or abrogated *Havens Realty* is without basis. Nor did the minority courts explain how the *Spokeo* decision impacted *Havens Realty*. In any event, distinguishing *Havens Realty* did not excuse the minority courts from ignoring the plain language of the statute and instead imposing an additional term of their own creation.

Indeed, as the *Lily Pond* Court recently held, both *Havens Realty* and *Spokeo* support the proposition that a disabled plaintiff suffers injury when he/she reviews a discriminatory website and no intent to book or visit the area is required. 2020 U.S. Dist. Lexis 244506, passim.

The Eleventh Circuit Court's recent decision in *Muransky* is also helpful. There, the Eleventh Circuit applied *Spokeo* in holding that a class of plaintiffs did not suffer cognizable

injury arising from the defendant issuing credit card receipts that included too many credit card digits. The Eleventh Circuit concluded that the plaintiffs did not suffer concrete injury from the defendant's bare procedural violation. *Muransky* did not involve the violation of any statutory obligation for the defendant to provide information to the plaintiff. Rather, it involved the Fair and Accurate Transactions Act ("FACTA"), the purpose of which was "to prevent identity theft". *Id*., at *5. Critically, *Muransky* discussed the difference between a "bare procedural" right and a "substantive" right, within *Spokeo*'s context. In this regard, it states:

> *Spokeo*'s statement stands for the unremarkable proposition that, in some cases, the violation of a procedural right set out in a statute will necessarily result in the harm that Congress was trying to prevent. **A prime example is the illegal deprivation of information**: "a plaintiff suffers an 'injury in fact' when the plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute." *Akins*, 524 U.S. at 21 (citation omitted); see also *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373, [] (1982) (denial of "legal right to truthful information about available housing" is an Article III injury). That, the Supreme Court has already made clear, is not a "bare" procedural violation, or one that is "divorced from any concrete harm"; if a statute protects against a lack of information, the denial of access to information is a concrete injury. For FACTA, on the other hand, a violation of the statute does not directly result in the harm Congress was trying to prevent. That is, no one's identity is stolen at the moment a receipt is printed with too many digits. See Pub. L. No. 108-159, 117 Stat. at 1952 (a goal of FACTA is "to prevent identity theft").

2020 U.S. App. LEXIS 33995, at ** 26-27 (emphasis added).

The *Muransky* opinion is perhaps the most critical to the case at bar because it analyzes both *Spokeo* and *Havens Realty* and specifically delineates precisely when a bare procedural violation of a statute does NOT automatically trigger injury and where a violation of a statute is substantive - with the illegal deprivation of information being the latter, which automatically triggers injury.

Nor does *Spokeo* overturn the long line of authorities which recognize tester standing

under various civil rights statutes. In *Watts*, 758 F.2d at 1485-86, the Eleventh Circuit surveyed

various instances where testers were granted standing for encountering discriminatory violations

even when they had no intention of availing themselves of any goods, services, etc. of the

respective defendants. This included *Meyers v. Pennypack Woods Home Ownership Assn*., 559

F.2d 894 (3rd Cir. 1977), where black tester had standing over housing discrimination even

though his only reason for applying was to test legality;  *Evers v. Dwyer*, 358 U.S. 202 (1958), in

which the Supreme Court recognized standing of black tester who sat in white section of bus

solely to test legality of segregation policy and had never ridden that bus before;  *Pierson v. Ray*,

386 U.S. 547 (1967), which recognized standing of clergymen whose sole purpose for going to

Jackson bus terminal was to encounter discrimination and test its legality.

> ### G.    Closed Credit Union Cases Are Inapposite

The Defendant and minority courts also misapply  *Griffin v. Dep't of Labor Fed. Credit

Union*, 912 F.3d 649, 653-57 (4th Cir. 2019), which involved a closed credit union being sued by

vision impaired plaintiffs for failure to be compatible with screen reader software. In this regard,

the Defendant and minority courts failed to recognize that *Griffin* specifically stated that its

holding was strictly limited to instances where the plaintiff was **legally barred** from availing

himself of the defendant's services and expressly disclaimed that it was not considering "the

rights generally of people with disabilities to sue for Internet-based harms under the ADA..." 912

F.3d  at 652, 653 (emphasis added).  The Seventh Circuit addressed another closed credit union

case in *Carello*,  930 F.3d at 833, and stated that it narrowly followed *Griffin*.   Critically, what

the Defendant and minority courts conveniently overlooked is additional language in *Carello*

whereby the Seventh Circuit went on to explain that the credit union cases were entirely

distinguishable from instances where a defendant failed to comply with its legal obligation to provide the plaintiff with information (which is precisely the injury here). *Carello* expressly recognized that where a defendant is under a legal mandate to provide information, failure to do so gives rise to actionable injury and nothing additional is required. *Carello*, 930 F. 3d at 833. On this point, the Court stated:

> A harm is not an informational injury simply because it has something to do with information. An informational injury occurs when the defendant refuses to provide the plaintiff with information that a law—typically, a sunshine law—entitles him to obtain and review for some substantive purpose. See, e.g., *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 21, 24-25 [](1998) (concluding that voters' inability to obtain information subject to disclosure under the Federal Election Campaign Act of 1971 is a sufficiently concrete injury); *Pub. Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 449 [] (1989) (explaining that, to satisfy Article III's injury requirement, advocacy organizations requesting information subject to disclosure under the Federal Advisory Committee Act need only show "that they sought and were denied" the information); *Casillas*, 926 F.3d at 337-38 ("[*Akins and Public Citizen*] hold that the denial of information subject to public disclosure is one of the intangible harms that Congress has the power to make legally cognizable." (emphasis omitted)). In such cases, a plaintiff "need not allege any additional harm beyond" his failure to receive information that the law renders subject to disclosure. *Spokeo*, 136 S. Ct. at 1549.

*Carello*, 930 F.3d at 835. In *Lily Pond*, 2020 U.S. Dist. Lexis 244506, passim, and *Waterfront*, a disabled plaintiff has standing for strictly informational injury even in the absence of any plans to travel to the area where the hotel is located. *Id.*, at 12-13. Thus, the *Carello* Court's opinion closely parallels that of *Muransky*.

Reading the above-referenced cases (*Ragin*, *Spokeo*, *Muransky*, *Carello*, *Tandy*, *Akins*, *Havens Realty*, etc.) together leads to the following summary of the law. Simply because a defendant is required to provide information, and the plaintiff learns about it, does not by itself give rise to actionable injury. For example, in *Spokeo*, the defendant was NOT under any legal obligation to provide information to the plaintiff, but was instead required to provide accurate

25

information to third party creditors (of whom the plaintiff was not a class member). Nor were the *Griffin*, *Carello* or *Brintley* defendants under any legal obligation to provide information to the respective plaintiffs. However, where the defendant is legally obligated to provide information to that plaintiff, failure to do so gives rise to actionable injury and it does not matter whether the plaintiff had any intention of doing anything with that information. Nor does it matter whether the information was of a public versus a private nature.  In the case at bar, the Defendant is obligated to provide certain accessibility information to the plaintiff. This therefore falls squarely within the holding of *Havens Realty* and its progeny.

It is highly significant that ADA cases involving vision impairment/screen reader software involve an entirely different kind of injury. In those instances, there is no promulgated regulation and, therefore, there is no legal obligation for defendants in those cases to provide any information to disabled persons. Thus, *Havens Realty* and the cases involving informational injury are entirely inapplicable to screen reader software cases. Moreover, such cases are governed by a different subsection: namely 12182(b)(2)(A)(iii)(auxiliary aids). See *Robles v. Domino's Pizza, LLC*, 913 F.3d 898, 904 (9th Cir.; 2018), *cert. denied*, 140 S.Ct. 122(2019)(applying this subsection to screen reader software discrimination). Because this subsection plainly contains a physical nexus requirement, imposition of the requirement that a plaintiff intend to visit the property is entirely consistent with that subsection's language. By contrast, because such language is omitted from the subsection governing online reservations systems, this requirement cannot be imposed.  By contrast, in cases involving hotel online reservations systems, hotels are legally mandated to provide information to disabled persons, of whom this plaintiff is a member.  Therefore, this Plaintiff's encounter with Defendant's

discriminatory ORS is a complete injury and nothing more is required.

### H.   The *Dove Hess* Court Also Misread C*amacho*

The *Dove Hess* Court also misread *Camacho* as **requiring** an intent to visit the subject

property. Again, *Camacho* is a screen reader software case where arguably more is required -

including an intent to visit the property. However, like *Juscinska*, *Camacho* only referenced the

plaintiff's intent and did not hold that such an intent was a required element of her injury. Rather,

it considered the plaintiff's intent only in analyzing the plausibility that the plaintiff would revisit

the website itself.  *Camacho*, 2019 U.S. Dist. Lexis 209202, at *29. The court addressed this

argument as follows:

> Defendant notes that Plaintiff's allegation that he "intends to visit Defendant's school in
> the near future  if he could visit their website" is present in many, if not all, of the other
> complaints. []. From this, Defendant urges the Court to intuit that this allegation, as it
> appears in the Second Amended Complaint, should be discredited.[]. If Plaintiff were to
> visit each of the schools named in those complaints, he would be forced to travel to 42
> cities across 19 states. []. Doubting the feasibility of such an expansive college tour,
> Defendant argues that the Second Amended Complaint does not adequately plead an
> intent to visit Defendant's school, and thus has not alleged facts that make it "reasonable
> to infer that Plaintiff's expressed intent to return to the Property is likely to materialize
> into fact sometime in the future." []
> Defendant's argument, built around citations to cases involving ADA claims relating to
> access to physical locations, misses the mark. Plaintiff has claimed that he was denied
> access to the Website, not Defendant's physical location itself. Thus, Defendant [sic] need
> not have shown that he intended to "return" to Defendant's school in Nashville,
> Tennessee. He is only required to have established a reasonable inference that he intended
>  to return to the Website, and the Court has found that this requirement is met. To the
> extent it is relevant, Plaintiff has also clarified that he does not intend to visit each of the
> schools against which he has filed complaints. [] Rather, he wishes to visit each of the
> schools' websites, learn more about them, and then make an informed choice regarding
> which schools it would be worth visiting in person.[]. The Court does not doubt that it
> would be plausible for Plaintiff to visit the websites of all 50 schools, if they were
> accessible.

*Id*. at. ** 29-31. Therefore, *Dove Hess'* interpretation that Camacho required an intent to visit the

property was entirely baseless. Moreover, on this point, the *Dove Hess* Court stated it is not necessary that the Plaintiff intend to book a room at every single hotel she has sued. Rather, "it is not facially implausible that she intends to at least visit each of their websites in order to make an informed choice about whether to visit in person, which is the injury she alleges here." 2020 U.S. Dist. LEXIS 216752 at *60. As discussed above, *Hernandez* misinterpreted *Juscinska* on exactly the same point.

## IV.    Plaintiff Intends To Visit The Area

Although it is not necessary for purposes of standing, Plaintiff does indeed intend to visit the State, as alleged in her amended complaint and stated in her Affidavit.

Moreover, this is entirely distinguishable from the "some day" intention referenced by the Supreme Court in  *Lujon v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). In *Lujon*,, the plaintiffs intended to travel to Egypt "some day", where they would presumably then witness the endangerment of the Nile Crocodile. The case at bar stands in stark contrast. As stated above, Plaintiff has a system of ensuring that he returns to the websites of every hotel he has sued. Thus, he will again encounter injury when he revisits Defendant's discriminatory ORS. ADDITIONALLY, she intends to travel to the State as soon as the Covid crisis is over. This hardly qualifies as "some day", but is concrete and definite. See *Dove Hess*, 2020 U.S. Dist. Lexis 216752 *54 (holding that intent to visit after the Covid crisis abates is sufficient).

Critically, in the instant case, the Plaintiff has a system whereby she maintains and constantly updates a list of all hotels she has sued regarding their online reservations systems. She makes sure she visits the ORS in each case shortly after the respective complaint is filed, then again when the defendant is required to bring its ORS into compliance with the law.  Thus,

28

she insures that she either will again suffer injury if the defendant does not comply with the law, or will benefit if the defendant does indeed comply. Under *Parks*, 2020 U.S. Dist. Lexis 86790, at *7, and *Dove Hess*, 2020 U.S. Dist. LEXIS 216752 at * 53, such a system of rechecking suffices to establish standing.

## V.    Defendant Is Liable For Third Party Violations

Defendant sweepingly claims that it is not liable for its discrimination through third party providers. Defendant omits the fact that these third parties only provide their services pursuant to a contract with the hotel, Defendant accepts reservations made through them, transacts credit card purchases through them and  provided them with the information they have. Defendant interacts with these providers on a constant basis. This typically is through direct access from the Defendant's hotel computer directly to its own site on the third party's platform. Using this direct access, hotels typically upload and download their own information on a constant (almost daily) basis.   The Regulation imposes liability on Defendant for its discriminatory online system "made by any means, including... through a third party".  28 C.F.R. Section 36.302(e)(1).   In this regard, Defendant is obviously attempting to mislead this Court. The law  is plainly clear that a hotel is directly liable for any failure of its online reservations system to comply with the Regulation, even if operated through third parties. See *Kennedy v. Siesta Inn & Suites, Inc*. 2020 U.S. App. Lexis 31073, ** 7-8 (11th Cir. 9/30/20)(unpublished)(hotel liable for discrimination through third party sites); *Parks v. Richard*, 2020 U.S. Dist. Lexis 127639, passim (M.D. Fla. 7/21//20)(same).

Clearly, the fact that the third party sites are non-compliant are exclusively the Defendant's own fault.

29

## VI.   Conclusion

For the foregoing reasons, Defendant's motion must be denied.

Respectfully submitted,

  /s/ Daniel G. Ruggiero
Daniel G. Ruggiero, Esq.
275 Grove Street, Suite 2-400
Newton, MA 02466
druggieroesq@gmail.com
(339) 237-0343

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the February 18, 2021, a copy of the foregoing Memorandum in Opposition to the Motion to Dismiss was filed electronically and served on all counsel of record via the Court's CM/ECF system.

By:  /s/ Daniel G. Ruggiero
    Daniel G. Ruggiero, Esq.
    275 Grove Street, Suite 2-400
    Newton, MA 02466
    druggieroesq@gmail.com
    (339) 237-0343