## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

DEBORAH LAUFER,                     )
                                         )
                 Plaintiff,       )
                                         )
v.                                    )   Docket no. 2:20-cv-00344-GZS
                                       )
ACHESON HOTELS, LLC,         )
                                       )
                                       )
                Defendant.    )

## ORDER OF DISMISSAL

Before the Court is Defendant Acheson Hotels, LLC's Motion to Dismiss (ECF No. 9) and the related Request for Judicial Notice (ECF No. 10). Via these filings, Defendant asks the Court to find that Plaintiff lacks standing to pursue her claim under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181-12189. For reasons explained herein, the Court GRANTS both Motions.

## I.    LEGAL STANDARD

Defendant's Motion invokes Federal Rule of Civil Procedure 12(b)(1), which requires dismissal of claims over which this Court lacks subject matter jurisdiction. A federal court is obligated to ensure the existence of subject matter jurisdiction before considering the merits of any complaint. See, e.g., United States v. University of Mass., Worcester, 812 F.3d 35, 44 (1st Cir. 2016). Plaintiffs generally bear the burden of demonstrating subject matter jurisdiction. See, e.g., Aversa v. United States, 99 F.3d 1200, 1209-10 (1st Cir. 1996). Faced with a motion to dismiss based on lack of jurisdiction, the Court applies the same "plausibility standard applicable under Rule 12(b)(6)" to the operative complaint. Hochendoner v. Genzyme Corp., 823 F.3d 724, 730 (1st Cir. 2016). However, the Court may also consider additional materials submitted by either

side that allow it to resolve the jurisdictional challenge.  See Valentin v. Hospital Bella Vista, 254 F.3d 358, 363-64 (1st Cir. 2001) (noting that "plaintiff's well-pleaded factual allegations . . . [may be] augmented by an explanatory affidavit or other repository of uncontested facts").

In accordance with Article III of the Constitution, federal courts may only decide cases that "embody a genuine, live dispute between adverse parties." Carney v. Adams, 141 S. Ct. 493, 498 (2020) (explaining that this requirement "prevent[s] the federal courts from issuing advisory opinions").  The doctrine of standing implements this requirement by imposing three key requirements on a plaintiff:  "(1) . . . an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016) (citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992)).  "The plaintiff bears the burden of establishing these elements and must plead sufficient factual matter to plausibly demonstrate standing to bring the action." Perez-Kudzma v. United States, 940 F.3d 142, 145 (1st Cir. 2019) (internal citations and quotation marks omitted); see also Uzuegbunam v. Preczewski, 141 S. Ct. 792, 796 (2021) ("The doctrine of standing generally assesses whether [a plaintiff's personal] interest exists at the outset.")

As to injury in fact, the "first and foremost of standing's three elements,"  the Supreme Court has explained that "Congress cannot erase [the injury-in-fact requirement] by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." Spokeo, Inc. v. Robins, 136 S. Ct. at 1547-48 (internal quotation marks omitted).  Thus, even when a plaintiff bases her case on the violation of a federal statute, "[t]o establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Id. at 1548 (quoting Lujan, 504 U.S. at 560); see also Thole v. U.S. Bank N.A., 140 S. Ct. 1615, 1620 (2020) ("This

Court has rejected the argument that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." (internal quotation marks omitted)).

## II.    FACTUAL BACKGROUND

Plaintiff Deborah Laufer is a resident of Florida. She "is unable to engage in the major life activity of walking more than a few steps" and uses a wheelchair, cane or other support to ambulate. (Am. Compl. (ECF No. 13), PageID # 120.)[1] She also has "limited use of her hands," which impacts her ability to grasp objects. (Id.) Laufer is "also vision impaired." (Id.) Outside her home, she "primarily rel[ies] on a wheelchair" and uses an accessible vehicle with a ramp. Laufer is a self-proclaimed "advocate" for "similarly situated disabled persons." (Id., PageID #s 120-21.) Her advocacy focuses on working as "a 'tester' for the purpose of asserting her civil rights and monitoring, ensuring, and determining whether places of public accommodation and their websites are in compliance with the ADA." (Id. at 121.) More specifically and as it relates to this case, Laufer tests online reservation systems ("ORS") of hotels and lodging establishments to ensure that these systems comply with ADA regulations regarding making reservations for accessible guest rooms. See 28 C.F.R. § 36.302(e)(1).

Defendant Acheson Hotels, LLC ("Acheson") owns and operates the Coast Village Inn and Cottages ("Coast Village Inn"), located in Wells, Maine. By operating this lodging establishment, Acheson is subject to the various regulations that seek to ensure places of public accommodation are accessible to disabled persons. Prior to September 24, 2020, Laufer visited the ORS for the Coast Village Inn multiple times "for the purpose of reviewing and assessing the accessible

---

[1] Via its 2/9/21 Endorsement Order (ECF No. 14), the Court notified the parties that it would use the Amended Complaint (ECF No. 13) as the operative pleading for purposes of the then-pending Motion to Dismiss unless Defendant withdrew the Motion.

features at the Property and ascertain[ing] whether they meet the requirements of 28 C.F.R. § 36.302(e) and her accessibility needs." (Am. Compl., PageID #s 124 & 127.)  Since 2019, Laufer has been planning a trip to Maine. (Laufer Decl. (ECF No. 17), PageID # 171.)  Specifically, Laufer has planned to drive from Florida to Maine and then to Colorado with her grandchild "meandering all throughout the states in which she passes [with] stop[s] at tourist attractions, points of interest, educational and historic sites." (Am. Compl., PageID # 123.)  While in Maine, Laufer has planned to "meet with her sister and look for a bed and breakfast to possibly buy and run." (Id.)  While Laufer "initially planned to travel during the Summer of 2020, [she] now awaits the passing of the Covid crisis and, once it subsides, she will take her trip." (Id., PageID # 124.)

Prior to September 24, 2020, when Laufer visited www.thecoastvillageinn.com, the ORS "failed to identify accessible rooms, failed to provide an option for booking an accessible room, and did not provide sufficient information as to whether the rooms or features at the hotel are accessible."[2] (Id.)  Laufer asserts that the failure to include this accessibility information deprives her of "the ability to make a meaningful choice." (Laufer Decl., PageID # 171.)  She further asserts that the conditions she encountered when visiting the ORS from her home caused her to suffer "humiliation and frustration at being treated like a second class citizen, being denied equal access and benefits to . . . accommodations and services."[3] (Id., PageID # 172.)

---

[2] Having visited www.thecoastvillageinn.com in connection with reviewing the pending Motion, the Court notes that the website has a banner that states: "Please note:  Unfortunately, we do not have the capabilities to provide ADA compliant lodging.  We apologize for the inconvenience!"  However, the website also explains that the Inn has "no shared hallways" and that "every guest has a direct entrance from his/her car into their cottage or room."  The room description portion of this ORS contains pictures of the rooms and notes that some rooms have "updated bathrooms" with an "easy entry shower."  See www.thecoastvillageinn.com (last visited 5/13/21).

[3] Laufer encountered similar problems when she visited various alternative ORS for the Coast Village Inn including at www.emea.littlehotelier.com, www.expedia.com, www.hotels.com, www.booking.com, www.orbitz.com, www.priceline.com, www.agoda.com, www.trip.com, www.cheaptickets.com, www.travelocity.com, www.hotelplanner.com, and www.vacation.hotwire.com.  Am. Compl., PageID #s 125-26.  For purposes of the present motion, the Court does not consider or address whether Defendant can be liable for the accessibility information found on each of these third-party ORS.  But see, e.g., Laufer v. Patel, No. 1:20-cv-00631-RP, 2021 WL

In other similar cases filed in this District[4] and federal courts in various other states, Laufer claims to have documented similar problems with the ORS of other lodging establishments. In total, she has filed over 650 similar cases involving non-compliant ORS. (See Def. Ex. 1 (ECF No. 10-1).) Laufer "maintains a system to ensure that she revisits the online reservation system of every hotel she sues." (Am. Compl., PageID # 127.)

In this case, Laufer ultimately seeks a declaratory judgment, an injunction requiring Defendant to bring its ORS into compliance with 28 C.F.R. § 36.302(e)(1), as well as attorney's fees and costs.

## III.   DISCUSSION

Defendant's Motion urges the Court to dismiss this action due to Plaintiff's lack of standing; more specifically, due to Plaintiff's lack of any plausible injury that is concrete and imminent. (See Def. Mot. (ECF No. 9), PageID # 33.) At the outset, it is important to note that Laufer is only alleging a violation of the ADA's "Reservations Rule"[5] found in 28 C.F.R. § 36.302(e)(1). She does not allege that Defendant's establishment has physical barriers that violate applicable ADA building standards, nor does she allege that the ORS itself is inaccessible. Thus, her claimed injury is an informational injury, which Plaintiff insists is sufficient to satisfy the

---

796163, at *4 (W.D. Tex. Mar. 2, 2021) (noting that "most courts in the Fifth Circuit that have considered whether an e-tester had standing to sue about third-party hotel booking websites have concluded that the e-tester lacked standing").

[4] See, e.g., Laufer v. Whitman Family LLC, D. Me. Docket No. 1:20-cv-00340-GZS, Laufer v. MHMP Inc., D. Me. Docket No. 1:20-cv-00341-GZS, Laufer v. Migis Hotel Group LLC, D. Me. Docket No. 20-cv-00342-GZS, , Laufer v. Inn at St. John, D. Me. Docket No. 2:20-cv-00346-GZS, Laufer v. Giri Hotels LLC, D. Me. Docket No. 2:20-cv-00345-GZS, Laufer v. Mar-Lyn In Maine, LLC, D. Me. Docket No. 2:21-cv-00007-GZS.

[5] See, e.g., Arroyo v. JWMFE Anaheim, LLC, No. 8:21-cv-00014-CJC-KES, 2121 WL 936018, *1 (C.D. Cal. Feb. 16, 2021) (referring to 28 C.F.R. § 36.302(e) as "the ADA's Reservation Rule"); Love v. Wildcats Owner LLC, No. 4:20-cv-08913-DMR, 2021 WL 1253739, at *3 (N.D. Cal. Apr. 5, 2021) (detailing the requirements of 28 C.F.R. § 36.302(e) and referring to these requirements as the "Reservations Rule").

injury-in-fact requirement.  (See Pl. Response (ECF No. 16), PageID #s 145-51.)  On the record presented, the Court disagrees.

The Supreme Court has recognized informational injuries as a basis for standing previously.  First, in Havens Realty Corp v. Coleman, 455 U.S. 363 (1982), the Supreme Court held that a tester had standing to sue under the Fair Housing Act when he was denied "truthful information concerning the availability of housing." Id. at 373.  Then, in Public Citizen v. United States Department of Justice, 491 U.S. 440 (1989), the Court found that an advocacy group suing for information under the Federal Advisory Committee Act could establish standing by showing "that they sought and were denied" information subject to disclosure under this statute. Id. at 449. Almost a decade later, in Federal Election Commission v. Akins, 524 U.S. 11 (1998), the Supreme Court found that voters had standing under the Federal Election Campaign Act to obtain information subject to disclosure under that Act.  See id. at 21. In considering these Supreme Court precedents, the First Circuit has explained that all "relied on Congress's power to identify 'previously inadequate' intangible injuries and protect them with 'procedural right[s]' whose infraction 'constitute[s] injury in fact' without proof of 'any *additional* harm beyond the one Congress has identified.'" Amrhein v. eClinical Works, LLC, 954 F.3d 328, 333 (1st Cir. 2020) (quoting Spokeo, 136 S. Ct. at 1549).  However, in the same decision, the First Circuit acknowledged, "[t]here are limits; even Congress can't spin a 'bare procedural violation, divorced from any concrete harm' into an 'injury-in-fact.'" Id. (quoting Spokeo, 136 S. Ct. at 1549).

Plaintiff asserts that by seeking to vindicate the Reservations Rule, she "falls squarely within the holding of Havens Realty and its progeny." (Pl. Response (ECF No. 16), PageID # 158.)  However, in the Court's assessment, finding standing based solely on Plaintiff's status as an e-tester who sustained an informational injury while generally conducting online research of

lodging options would require an expansion of the holdings of Havens Realty, Akins, and Public Citizen into the ADA context. See, e.g., Carello v. Aurora Policemen Credit Union, 930 F.3d 830, 835 (7th Cir. 2019) (Barrett, J.) (declining to hold that standing under the ADA can be based on informational injury theory where plaintiff was seeking "accessibility accommodations, not disclosure"). Most recently, the First Circuit has held that "status as testers does not defeat standing" under the ADA. Suárez-Torres v. Panaderia y Reposteria Espana, Inc., 988 F.3d 542, 551 (1st Cir. 2021). However, the corollary to this holding is that status as a tester likewise does not necessarily confer standing. Thus, the Court concludes that Plaintiff must establish that her informational injury is, in fact, both concrete and imminent. For the reasons that follow, the Court ultimately concludes that Plaintiff does not meet either of these requirements.

### A.      Plaintiff's Injury is Not Concrete.

"Article III standing requires a concrete injury even in the context of a statutory violation." Spokeo, 136 S. Ct. at 1549. Thus, the Court must consider "(1) whether the statutory provisions at issue were established to protect [Plaintiff's] concrete interests (as opposed to purely procedural rights), and if so, (2) whether the specific procedural violations alleged in this case actually harm, or present a material risk of harm to, such interests." Robins v. Spokeo, Inc., 867 F.3d 1108, 1113 (9th Cir. 2017) (considering the concreteness requirement of standing on remand), cert. denied, 138 S. Ct. 931 (2018).

In relevant part, Title III of the ADA provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a). This prohibition on discrimination may be enforced by "any person who is being subjected to discrimination on the basis of disability." 42 U.S.C. § 12188 (a)(1).

7

As to the first prong of concreteness, the just-quoted ADA provisions were established to protect the concrete interests of disabled persons in accessing places of public accommodation. Here, Plaintiff claims discrimination only in the ORS, not in the actual concrete place of public accommodation.[6] Thus, in some ways Plaintiff's claim could be characterized as "procedural" to the extent that her chief complaint is that she cannot research and reserve accessible accommodations using the same procedure that is set up for non-accessible accommodations. Nonetheless, the Court assumes without deciding that Plaintiff is adequately invoking protection of her concrete interests under the ADA to "full and equal enjoyment" of Defendant's accommodations. 42 U.S.C. § 12182(a).

Turning to the second prong of concreteness, the Court must consider the actual harm caused by the alleged violations. Here, the Court concludes that the violations alleged do not amount to a harm or a material risk of harm to Plaintiff's concrete interests in accessing Defendant's place of public accommodation. The reason for this conclusion is two-fold. First, Plaintiff lacked any intention to actually access Defendant's place of public accommodation when she visited the ORS. While Plaintiff maintains that any disabled person who visits an ORS and concludes that the ORS violates the ADA's Reservations Rule should have standing to sue the lodging establishment regardless of their intention to make a reservation and visit the establishment, multiple courts have now rejected this view. See, e.g., Laufer v. Mann Hosp., L.L.C., No. 20-50858, 2021 WL 1657460, at *2 (5th Cir. Apr. 28, 2021) ("[Laufer] visited the ORS to see if the motel complied with the law, and nothing more. Such allegations do not show

---

[6] The extent to which websites should be viewed as covered by Title III of the ADA is an emerging area of dispute. Compare Gil v. Winn-Dixie Stores, Inc., 993 F.3d 1266, 1277 (11th Cir. 2021) (holding that "websites are not a place of public accommodation under Title III of the ADA"), with Robles v. Domino's Pizza, LLC, 913 F.3d 898, 905–06 (9th Cir.) (holding that "the ADA applies to Domino's website and app, which connect customers to the goods and services of Domino's physical restaurants"), cert. denied, 140 S. Ct. 122 (2019).

enough of a concrete interest in Mann's accommodations to confer standing."); <u>Laufer v. Looper</u>, No. 1:20-cv-02475-NYW, 2021 WL 330566, at *5 (D. Colo. Jan. 11, 2021) ("[W]ithholding of information itself does not constitute a concrete injury—the information must have some relevance to the litigant.") (citing <u>Griffin v. Department of Labor Fed. Credit Union</u>, 912 F.3d 649, 654 (4th Cir. 2019)); <u>Laufer v. Naranda Hotels, LLC</u>, No. CV SAG-20-1974, 2020 WL 7384726, at *4 (D. Md. Dec. 16, 2020) ("Pure testers, by definition, have no desire to actually use the room reservation website, and the information required by § 36.302(e)(1) has no specific relevance to them beyond their generalized desire to find ADA violations and file lawsuits."); <u>Laufer v. Dove Hess Holdings, LLC</u>, No. 5:20-cv-00379BKS-ML, 2020 WL 7974268, at *15 (N.D.N.Y. Nov. 18, 2020) ("[T]o allege an injury-in-fact for standing purposes, a plaintiff challenging a website's ADA violations must demonstrate that she had a purpose for using the website that the complained-of ADA violations frustrated, such that any injury is concrete and particularized to the plaintiff.")  In short, to plausibly allege concrete harm based on a violation of the Reservations Rule, a plaintiff must have a genuine plan to make a reservation.

Second, as it turns out in this particular case, Plaintiff's inability to reserve an accessible room via the ORS reflects the reality of Defendant's place of public accommodation.  While Plaintiff's Amended Complaint contains a rote recitation that Defendant's ORS "failed to provide an option for booking an accessible room" and "did not provide sufficient information as to whether the rooms or features at the hotel are accessible," this alleged failure reflects the apparent reality that there is no "ADA compliant lodging" at this facility.  <u>See</u> supra note 2 (describing Defendant's website).  While recognizing that this reality may give rise to another type of ADA claim, the Court concludes that Plaintiff cannot claim a concrete informational injury based on the failure of an ORS to allow her to book an accessible room that apparently does not exist.  <u>Accord</u>

<u>Carello</u>, 930 F.3d at 833 (holding that "plaintiff who is *legally barred* from using a credit union's services cannot demonstrate an injury that is either concrete or particularized" based on the credit union maintaining an inaccessible website); <u>Griffin</u>, 912 F.3d at 657 (same).

### B.      Plaintiff's Injury is Not Imminent.

"[T]o create standing, a threatened injury must be 'imminent' or 'actual' when the plaintiffs filed their complaint." <u>Amrhein</u>, 954 F.3d at 332 (citations omitted).  Here, taking judicial notice of the state of the COVID-19 pandemic and the travel restrictions then in place, the Court is hard pressed to see how Plaintiff faced an imminent injury in the fall of 2020.[7]  However, the Court acknowledges that the state of the pandemic and the facts alleged in the operative pleading have changed in the intervening months.  In her Amended Complaint (ECF No. 13) and Declaration (ECF No. 17), Laufer avers that she has been planning a cross-country road trip since 2019 and that the trip will commence once the pandemic abates.  It is certainly plausible that Laufer (and many other individuals) will resume traveling as the pandemic abates.  However, on the record presented, the Court declines to find that Laufer, who apparently has not made a single reservation, is imminently about to embark on a trip from Florida to Maine.  <u>See, e.g.</u>, <u>McInnis-Misenor v. Maine Med. Ctr.</u>, 319 F.3d 63, 73 (1st Cir. 2003) (affirming dismissal of Title III claim based on ripeness and prudential standing upon finding plaintiff's "claimed injury may never come to pass").  Moreover, taking judicial notice of Laufer's many similar cases filed in courts around the country, the Court finds it implausible that Laufer's wanderlust will translate into an imminent need to book accommodations in Colorado, Connecticut, District of Columbia, Florida, Georgia,

---

[7] In its Motion, Defendant correctly describes the initial version of Plaintiff's Complaint (ECF No. 1) as lacking allegations of "any direct contact with Coast Village Inn," any previous travel to any part of Maine or "any plans to travel to Maine in the future."  Def. Mot., PageID # 33.

Illinois, Indiana, Maine, Massachusetts, Maryland, New Jersey, New York, Ohio, Pennsylvania, Rhode Island, Texas, and Wisconsin.[8]  (See Def. Ex. 1 (ECF No.10-1), PageID#s 41-78.)

In this case, the nature of the injunctive relief sought by Plaintiff requires that she show that she "faces a 'real and immediate threat' of future injury."  Carello, 930 F.3d at 835 (quoting City of Los Angeles v. Lyons, 461 U.S. 95, 105 (1983)).  With no immediate plan to travel to Wells, Maine and with Defendant's website currently reflecting the limitations of their available lodging options, the Court readily concludes that Plaintiff cannot allege an immediate future injury from this particular Defendant's ORS.  See Lujan, 504 U.S. at 564 ("'Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects.'") (quoting Lyons, 461 U.S. at 102).

Thus, the Court ultimately concludes that Laufer has not asserted a plausible injury that is concrete and imminent as it relates to this Defendant.  The Court certainly recognizes that the issue of Laufer's standing to pursue such ADA claims based on her documented violations of the Reservations Rule has divided the federal courts.[9]  However, on the record presented, the Court

---

[8] The Court notes that other district courts have similarly found Laufer's recent proffers of longstanding, imminent plans for an extended road trip insufficient to create standing.  See, e.g., Laufer v. Naranda Hotels, LLC, Nos. 8:20-cv-1974-SAG & 1:20-cv-2136-SAG, 2020 WL 7384726, at *5 (D. Md. Dec. 16, 2020) ("Plaintiff's proffered travel plans, and the injuries she claims to have suffered as a result, still fall short of establishing her standing to sue."); Laufer v. Galtesvar OM, LLC, No. 1:20-cv-00588-RP, 2020 WL 7416940, at *7-*8 (W.D. Tex. Nov. 23, 2020) (declining to consider Laufer's affidavit, filed in response to motion to dismiss, as establishing an intent to visit Carrizo Springs, Texas as of the date she filed her complaint), report and recommendation adopted 2020 WL 7416195 (W.D. Tex. Dec. 15, 2020), aff'd No. 20-51018, 2021 WL 1726110 (5th Cir. Apr. 30, 2021).

[9] Compare, e.g., Laufer. v. Lilly Pond LLC C Series, No. 3:20-cv-617-wmc, 2020 WL 7768011, at *5 (W.D. Wis. Dec. 30. 2020) (finding standing but certifying the issue for interlocutory appeal), Laufer v. Surf Hotel Investments, LLC, Docket No. 1:20-cv-5364, 2021 WL 809732, at *2 (N.D. Ill. March 3, 2021) (finding standing and collecting cases similarly finding), Laufer v. Drashti Batavia LLC, No. 1:20-cv-407-LJV-MJR (W.D.N.Y. March 22, 2021) (slip opinion filed as ECF No. 23-1); Laufer v. Jamestown Hotel LLC, No. 1:20-cv-367-LJV-MJR (W.D.N.Y. March 22, 2021) (slip opinion filed as ECF No. 23-2), with Laufer v. Mann Hosp., L.L.C., No. 20-50858, 2021 WL 1657460 (5th Cir. Apr. 28, 2021) (affirming dismissal based on lack of injury in fact);  Laufer v. Looper, No. 1:20-cv-02475-NYW, 2021 WL 330566 (D. Colo. Jan 11, 2021) (dismissing for lack of standing); Laufer v. Naranda Hotels, LLC, Nos. 8:20-cv-1974-SAG & 1:20-cv-2136-SAG, 2020 WL 7384726 (D. Md. Dec 16, 2020) (finding that Laufer "lacks standing, lacks credibility and is not operating in good faith");  Laufer v. Dove Hess Holdings, LLC, No. 5:20-cv-00379-BKS-ML, 2020 WL 7974268, at *15 (N.D.N.Y. Nov. 18, 2020), motion to certify appeal denied, 2021 WL 365881 (N.D.N.Y. Feb. 3, 2021).

concludes that Laufer has only plausibly alleged a "a bare procedural violation" of 28 C.F.R. §

36.302(e)(1) as it relates to this Defendant.  <u>Spokeo</u>, 136 S. Ct. at 1549.  Laufer's work to ensure

that accessibility information is in fact accessible to those planning a trip to Maine is undeniably

admirable.  But, such an interest does not amount to an injury that confers constitutional standing

and, thus, does not give rise to a live case or controversy over which this Court has jurisdiction.

## IV.    CONCLUSION

For the reasons just stated, the Court hereby GRANTS Defendant's Motion to Dismiss

(ECF No. 9) and Request for Judicial Notice (ECF No. 10).

SO ORDERED.

<u>/s/ George Z. Singal</u>
United States District Judge

Dated this 18th day of May, 2021.